**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ADMIRAL INSURANCE COMPANY, | |
| Plaintiff, | No. 20-cv-01951 |
| v. | |
| BROWN SERVICES, LLC DBA BROWN SAFETY SERVICES, ESTATE OF STEVEN SMITH. | Judge John F. Kness |
| Defendants, | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Admiral Insurance Company sued its insured, Defendant Brown Services, LLC, seeking a declaratory judgment that it owes Brown Services no coverage duties relating to a fatal construction accident. Admiral seeks this declaration under the Court's diversity jurisdiction even though no underlying wrongful-death lawsuit has been filed and in the absence of any clear evidence of the amount in controversy. Brown Services moves to dismiss the case for lack of subject matter jurisdiction. As explained below, because Plaintiff has not met its burden to show that the Court has jurisdiction over this case, the motion to dismiss of Brown Services is granted.

**I.    BACKGROUND**

This case arises from the unfortunate death of Steven Smith, who was accidentally killed on May 31, 2019 while working on a construction project in Michigan. On October 10, 2019, Brown received a letter from The Cincinnati

Insurance Company explaining that Cincinnati is the workers' compensation carrier for Thompson Electric, that Steven Smith was fatally electrocuted while working for Thompson Electric, and that Brown was negligent in the discharge of its responsibility for safety supervision at the relevant worksite. (*Id.* ¶¶ 15, 16, 18–19.) The letter requested that Brown preserve all documents and information relating to Smith's death. (*Id.* ¶ 20.)

Brown's risk manager received a letter the next day from counsel representing the Estate of Steven Smith. (*Id.* ¶ 9.) That letter asserted that, on May 31, 2019, Steven Smith suffered a fatal injury while working for Thompson Electric, Inc. on a project in Howard Township, Michigan. (*Id.* ¶ 10.) In the letter, the Estate's counsel asked Brown to preserve documents or other materials relating to Smith's death. (*Id.* ¶ 11.) The letter also advised Brown to "notify its liability carrier immediately or, in the event it is self-insured, . . . to contact the undersigned for purposes of discussing resolution of the matter without a lawsuit." (*Id.* ¶ 12.) According to the Estate's counsel, "if [Brown] fails to respond, the Estate of Smith *will be required to file suit*." (*Id.* ¶ 13) (emphasis added.)

Sometime thereafter, Brown submitted the Cincinnati and Smith letters to Admiral. (Dkt. 34 at 1.) On March 17, 2020, Admiral denied coverage for any litigation arising from the Cincinnati or Smith letters. (*Id.* ¶¶ 14, 21.) Admiral then brought this action against Brown to "resolve a dispute . . . as to whether [Brown] is entitled to coverage under a professional liability policy that Admiral issued to [Brown] with respect to a claim made related to the death of Steven Smith." (Dkt. 1

¶ 2.) Admiral seeks a declaratory judgment that Brown is not entitled to defense or indemnity coverage for what it refers to as the "Smith or Cincinnati Claims." (*Id.* ¶ 30.) In its complaint, Admiral alleges that the Court has diversity jurisdiction over this suit under 28 U.S.C. § 1332 because the parties are diverse[1] and because "the combined costs of defense and indemnity in the underlying suit" exceed $75,000. (*Id.* ¶¶ 3-4, 6.) Brown moves to dismiss and contends that, among other defects in Admiral's complaint, the Court lacks subject matter jurisdiction. (Dkt. 26.)

## II.    DISCUSSION

Beyond complete diversity of the parties, federal diversity jurisdiction requires the amount in controversy to exceed $75,000. *See* 28 U.S.C. § 1332(a). A federal court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999) (quoting *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993)). The amount in controversy is determined from the date of filing. *See Twin City Fire Ins. Co. v. Law Office of John S. Xydakis, P.C.*, 407 F. Supp. 3d 771, 776 (N.D. Ill. 2019); *see also Smith v. Am. Gen. Life and Acc. Ins. Co., Inc.*, 337 F.3d 888, 897 (7th Cir. 2003) ("[F]ederal jurisdiction exists, if at all, at the time of filing."). Once jurisdiction has been "called into doubt, the proponent of federal jurisdiction," here, Admiral, "bears the risk of non-persuasion." *Ware v. Best Buy Stores, L.P.*, 6 F.4th

---

[1] Brown contends that it is incorporated, and does business exclusively, in Ohio. Because the Court dismisses this case for lack of subject matter jurisdiction on other grounds, the remainder of the opinion assumes that Brown is an Illinois company.

726, 731 (7th Cir. 2021). Admiral may be called on " 'to prove facts that determine the amount in controversy' and must do so by a preponderance of the evidence." *Travelers Prop. Cas. v. Good*, 689 F.3d 714, 722 (7th Cir. 2012) (quoting *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 541 (7th Cir. 2006)).

Courts often determine the amount in controversy in insurance coverage actions by looking to the insurer's potential indemnity exposure in the underlying suit. *Sadowski*, 441 F.3d at 539. But the Seventh Circuit has explained that, in "actions seeking declaratory or injunctive relief, . . . the amount in controversy is measured by the value of the object of the litigation." *Golin v. Neptune Mgmt. Corp.*, 704 F. App'x 591, 595 (7th Cir. 2017) (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977)). That value "may be calculated by measuring the benefit to the plaintiff *or* the detriment to the defendant, but either way the value must be reasonably *determinable*." *Id.* (emphasis added).

Given that no underlying lawsuit exists, the "object" of the underlying state-court litigation here has an indeterminable value. That is troublesome in view of the well-established risk in declaratory judgment actions that a plaintiff will "impermissibly seek[] an advisory opinion about its obligation[s]." *Hyatt Intern. Corp. v. Coco*, 302 F.3d 707, 711 (7th Cir. 2002). In *Hyatt*, for example, the Seventh Circuit warned that "a declaratory action, like any other action, must satisfy Article III, which allows federal courts to act only in the event of actual 'cases and controversies.' " *Id.* at 712. As a result, the declaratory judgment plaintiff "must be able to show that the feared lawsuit from the other party is immediate and real,

4

rather than merely speculative." *Id.* A mere "threat of suit, however immediate, is not by itself sufficient . . . to issue a declaratory judgment." *Id.*[2]

*Hyatt* informs the Court's approach to determining the relevant amount in controversy. Without an actual state lawsuit—or even any suggestion as to the value of the potential claim that could potentially be brought against Brown—there is no reliable way to determine whether Admiral has met the amount-in-controversy requirement. Indeed, Admiral alleges that jurisdiction exists based on an ethereal amount-in-controversy in an underlying state lawsuit that has yet to be filed. Although the Smith and Cincinnati demand letters alluded to the possibility that lawsuits may be filed against Brown, and requested that Brown preserve potentially relevant evidence (Dkt. 1, ¶¶ 12-13, 20), this "threat of suit" is insufficient for granting declaratory relief. *Hyatt*, 302 F.3d at 712.

Admiral persists that the amount in controversy is satisfied because "[r]eported settlements and verdicts in death cases vastly exceed $75,000," and "the cost to defend Brown . . . would likely be substantial." (Dkt. 34 at 5–6.) It would almost certainly be true that, if an underlying wrongful death case were filed, the amount-in-controversy requirement could plausibly be met; Admiral need only prove the amount in controversy, after all, by a preponderance of the evidence. *See Travelers*, 689 F.3d at 722. But because there is no underlying litigation, there is no "object" with value greater than $75,000. *See Hyatt*, 302 F.3d at 711–13; *cf. Twin City*

---

[2] Although the uncertainty of potential underlying litigation in *Hyatt* dissipated before the appeal (rendering "the matter . . . somewhat academic"), the Seventh Circuit reminded district courts to take seriously their Article III obligations. *Id.*

*Fire*, 407 F. Supp. 3d at 777 (amount in controversy minimum met in declaratory judgment action because the complaint filed in the *underlying lawsuit* alleges more than $75,000); *Midland Mgmt. Co. v. Am. Alt. Ins. Co.*, 132 F. Supp. 3d 1014, 1018–20 (N.D. Ill. 2015) (same).

Admiral offers only speculation as to whether Brown will be sued, by whom, and for what relief. These uncertainties make determining the amount in controversy a legal impossibility, thus foreclosing any finding that subject matter jurisdiction exists. *See Macken ex rel. Macken v. Jensen*, 333 F.3d 797, 799–800 (7th Cir. 2003) ("When the monetary value of a controversy cannot be estimated, litigation must commence in state court."). Because the Complaint alleges no other bases for satisfying the amount in controversy requirement, it is apparent that the Court lacks diversity jurisdiction over this suit. *See Gardynski-Leschuck v. Ford Motor Co.*, 142 F. 3d 955, 958 (7th Cir. 1998) ("Unless the amount in controversy was present on the date the case began, the suit must be dismissed for want of jurisdiction.").

## III.  CONCLUSION

Because the Court lacks subject matter jurisdiction, this case is dismissed without prejudice.

SO ORDERED in No. 20-cv-01951.

Date: September 30, 2022

_____

JOHN F. KNESS
United States District Judge

6